JAMES E. MONTEL and EDWIN E. MONTEL, trading
as MONTEL & CO., *vs.* THE CONSOLIDATION COAL
COMPANY.

*The Act of 1868, ch. 471, (General Corporation Law,) a Substi-
tute for all existing laws on same subject—Construction of Sta-
tutes—Previous Special Charters not affected by General Corpo-
ration Law.*

The Act of 1864, ch. 371, added a section to Art. 26 of the Code, entitled
"Corporations." The Constitution of 1867, (Art. 3, sec. 48,) made it "the
duty of the Governor to appoint three persons learned in the law * * * to
prepare drafts of general laws providing for the creation of corporations,
etc., * * * and revising and amending * * * the general laws in exist-
ence on the 1st of June, 1867, providing for the creation of corporations,
etc.," and directed that such drafts of laws should be submitted to the
General Assembly for its action. As the result of the report of the Commis-
sioners thus appointed, the Act of 1868, ch. 471, was adopted, entitled "An
Act to repeal Art. 26 of the Code of Public General Laws, and to enact a
substitute therefor, and to repeal" certain other provisions of the Code
relating to suits, process and proceedings against corporations; but the Act
contained no express repealing clause. Among other sections omitted by
this Act from the several Articles referred to in its title, was that added to
Art. 26 by the Act of 1864, ch. 371, and it being contended that the latter
was still in force, it was HELD :

That the Legislature intended the Act of 1868, ch. 471, to be a substitute for
*all existing general laws* on the same subject; and this was clear without
reference to its title.

Where two Acts provide remedies, differing only in form, for the same sub-
stantial grievances, it would seem clear that the Legislature intended by the
later Act to prescribe the only rules which should govern in such cases. ·

*Semble,* that even though two statutes relating to the same subject be not, in
terms, repugnant or inconsistent, yet if the later statute were clearly intended
to prescribe the only rule which should govern in the case provided for, it
will be construed as repealing the first.

The Act of 1868, ch. 471, (General Corporation Law,) does not repeal the provisions of the charters of any corporations previously created and existing by virtue of special Acts. ( *Vide Webb, et al. vs. Ridgely, el al.,* 38 *Md.,* 364.)

APPEAL from the Circuit Court for Allegany County, in Equity.

This was a petition filed by· the appellants, charging that the appellee, under the provisions of certain mining charters to which it had succeeded, was bound to carry over its railroads, at certain rates, such coal or other merchandize as should be offered by other individuals or companies who might construct connecting roads; that the Spruce Hill Coal Company had, for the conveyance of coal from its mines, built such a road connecting with a branch road of the appellee, and for four or five years had shipped coal over the same, which the appellee had received and transported ; that the appellants became purchasers at sheriff's sale of all estates, rights and privileges of the Spruce Hill Company ; and that thereafter the appellee had refused, on their request with offer to pay the legal charges, to furnish transportation for their coal, but had abandoned and taken up the said branch road : they prayed the Court to pass an order requiring the appellee to restore the said road and to furnish transportation for their coal.

On exceptions taken by the appellee to the jurisdiction, the Court below held the Act of 1864, ch. 371, under which the proceeding was instituted, to be still in force, but afterwards dismissed the petition on the pleadings and evidence in the case.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

[The arguments of Counsel, except on the question of the repeal of the Act of 1864, ch. 371, are omitted. REP.]

*William Walsh* and *J. H. Gordon* for the appellants.

It is contended that the Act of 1864 was repealed by the Act of 1868, ch. 471. The preamble of the latter states its object to be to repeal, but there is no repealing clause in the Act, therefore no express repeal. And as there is no repugnancy in any of the provisions of the Act of 1864 to that of 1868, there can be no repeal by implication. *Sedgwick on Const. & Stat. Law*, 124–127; 9 *Pick.*, 87; *Dugan vs. Gittings*, 3. *G.*, 154; *Cromwell vs. State*, 12 *G. & J.*, 257; *Daviess vs. Fairbairn*, 3 *How.*, 636; *Haynes vs. Jenks*, 2 *Pick.*, 176; *Vinton vs. Welsh*, 9 *Pick.*, 87.

The necessary implication to repeal must be as certain as an express repeal.

*John P. Poe*, for the appellee.

The Act of 1864, ch. 371, is not in force. It was originally passed as an additional section to Article 26 of the Code of Public General Laws, and became section 127 of that Article. Code, Supp., 1861—1867, p. 59.

The commissioners appointed to revise the whole law relating to corporations, submitted their report with their draft of a proposed new Article, as a substitute for the then existing Article, including of course section 127, (Act of 1864, ch., 371.)

This proposed draft was adopted by the Legislature and became, accordingly, the new Article, and, operated as a repeal of the then existing Article *in all its parts*.

There is in the body of the Act no repealing clause, but this was probably omitted because it was supposed that the reference in the title was sufficient.

It is manifest that the Legislature never intended that there should be two Articles 26, nor two sections 127, as must necessarily be the result if the old Article in its entirety be not held to be repealed by the new. The subsequent law does fully embrace the whole subject of the

prior law under circumstances which preclude the idea that both were intended to stand together. The title is now a necessary part of every law, and so vital that if it erroneously describe the subject matter of the Act, the whole law becomes inoperative; therefore it would seem perfectly obvious that the Legislature intended the new Act to be a repeal of and substitute *in toto* for the old Article. If section 127, (Act of 1864, ch. 371,) in the old Article is not repealed, then all the other sections in that same Article which are not plainly repugnant to the new Article, are also not repealed, and thus we have in lieu of one complete system, two distinct systems and two distinct sets of sections in the same Article of the Code. This consideration, of itself, seems sufficient to show an obvious and irreconcilable repugnancy. If the title of the new Act of 1868 is to be considered at all, there can hardly be any room for the argument that the Act of 1864 is not repealed. That it must be considered, is clear.

"It is laid down in some of the books, that in construing a statute, the title (being no part of it) is not to be regarded, but we have high authority in this country for a different rule of construction—the opinions of the Judges of the Supreme Court as expressed in the *United States vs. Fisher*, 2 *Cranch*, 358;" *Canal Co. vs Railroad Co.*, 4 *G. & J.*, 90–1. "The title explains the whole scope and object of the law." *Ibid.* 168.

This was the law before the constitutional provision was declared making the title an indispensable part of every law  *A fortiori*, therefore must the title be attentively examined now. *Davis vs. State*, 7 *Md.*, 151; *Keller vs. State*, 11 *Md.*, 525 ; *Parkinson vs. State*, 14 *Md.*, 184 ; *Hardesty vs. Taft*, 23 *Md.*, 525 ; *Mayor &c., of Annapolis vs. State*, 30 *Md.*, 118 ; *Albert vs. White*, 33 *Md.*, 297 ; *Sedgwick on Const. and Stat. Law*, 50, 126, 567.

The latter Act revises the whole subject and enacts an entirely new law—thus indicating a clear intent to repeal the former. *Dugan vs. Gittings,* 3 *G.,* 154 ; *Bowen vs. Lease,* 5 *Hill,* 225 ; *Governor vs. Stout,* 22 *Wis.,* 234 ; *King vs. Davis, Leach,* 556 ; *Rex vs. Cator,* 4 *Burr.,* 2026 ; *Bartlet vs. King, Exr.,* 12 *Mass.,* 545 ; *re-affirmed in Nichols vs. Squire,* 5 *Pick.,* 168 ; *Conley vs. Calhoun Co.,* 2 *West Va.,* 420.

"When a statute is revised, some parts being omitted, the parts omitted are to be considered as annulled." *Pingree vs. Snell,* 42 *Maine,* 53 ; *Ellis vs. Page,* 1 *Pick.,* 43 ; *State vs. Conkling,* 19 *Cal.,* 501 ; *Farr vs. Brackett,* 30 *Vt.,* 344 ; *Giddings vs. Cox,* 31 *Vt.,* 607 ; *Wakefield vs. Phelps,* 37 *N. H.,* 295 ; *Mayor, &c. vs. Magruder,* 34 *Md.,* 386 ; *Plank Road Co. vs. Allen,* 16 *Barb.,* 18 ; *Const., Art.* 3, *Sec.* 29 ; *Mayor of Frederick vs. Groshon,* 30 *Md.,* 436 ; *Gorham vs. Luckett,* 6 *B. Monroe,* 154 ; *Pulaski Co. vs. Downer,* 5 *English,* 588 ; *Rogers vs. Watrous,* 8 *Texas,* 62 ; *Pierpont vs. Crouch,* 10 *Cal.,* 316.

MILLER, J., delivered the opinion of the Court.

The proceeding in this case was instituted in March, 1873, by the appellants, against the appellee under the Act of 1864, ch. 371, and the first question to be decided is whether that Act is repealed by the general corporation law of 1868, ch. 471. The Act of 1864, in terms adds an additional section to Article 26 of the Code of Public General Laws relating to corporations, and the added section provides in substance, that if any person shall be aggrieved by any company incorporated by the laws of this State, to transport persons or property for hire, "by reason of anything done or omitted to be done by the said company in violation or contravention of its duty in regard to the transportation or carriage of property or persons," it shall be lawful for such person to apply by petition, "in a summary way," to the Circuit

Court for the County where the company has an office for the transaction of its business, for relief against the alleged grievance, and such Court shall thereupon appoint a short day for hearing the petition, of which the company shall have notice, and on the hearing, or in case the company shall fail to appear, and show cause against the application, the Court shall and may on examination of the petition produced in support thereof, "pass such order for relieving the petitioner, or otherwise as to justice shall appertain," and shall have full power to enforce obedience to such "order by writ of injunction or attachment or other process which would be applicable in the enforcement of the said order, in the event that the same had been passed by the said Court in the exercise of its general equity jurisdiction."

The law of 1868, ch. 471, though professing by its title to be an Act to repeal Article 26, of the Code of Public General Laws, and to enact a substitute therefor, and to repeal other provisions of the Code, relating to suits, process and proceedings against corporations, contains no express repealing clause to that effect, and an examination of its numerous sections has convinced us, there is no such plain and unavoidable inconsistency or repugnancy in any of its provisions, to those of the particular section added to the Code by this Act of 1864, as would work a repeal thereof by implication, as the rule on that subject is generally understood and applied. The general rule is well settled, that several successive statutes on the same subject are to be construed together, and a subsequent law will not repeal a former one, if by construction they can be made to stand together. If, therefore, the Act of 1868, presented an ordinary case for the application of the rule of repeal by implication of a former statute *in pari materia,* it would not have that effect. But this law belongs to a class of legislation not unfrequent in modern times, where it becomes neces-

sary to revise and amend all existing laws upon some important matter, and establish in lieu thereof, a new and general law or Code, embracing a complete scheme of legislation on that particular subject. The Act of 1868, is emphatically a law of this character. The necessity for such a law upon the subject of corporations, had become so obvious and important, that by the Constitution, (Art. 3, sec. 48,) it was made the duty of the Governor, as soon as practicable after its adoption, to appoint three Commissioners learned in the law, whose duty it should be to prepare drafts of *general laws* providing for the formation of corporations, and for all other cases where a general law can be made, and for "*revising and amending*" so far as may be necessary or expedient the general laws in existence on the 1st of June, 1867, providing for the creation of corporations, and for other purposes, and that such drafts of laws should be submitted to the General Assembly for its action thereon. These commissioners were accordingly appointed, and in discharge of their duty in *revising and amending* existing laws on the subject of corporations, drafted and submitted the Act of 1868, which was adopted by the Legislature. When they addressed themselves to this duty they had before them Article 26 of the Code, consisting of one hundred and twenty-one sections, to which had been added one section by the Act of 1864, and five others by the Act of 1867, ch. 379, all of which in express terms were made part of the same Article. There were also before them section 22 of Article 16, sections 91 to 103 of Article 75, and sections 33 to 43 of Article 88 of the Code, all of which, as well as the section enacted by the Act of 1864, related especially to suits, process, and proceedings against corporations, as well those then existing as those thereafter to be formed, and whether formed under general laws or created by special statutes.

These were the existing *general laws* relating to corporations, which, by the terms of the Constitution it was

made the duty of the Commissioners to revise and amend. The result of their labors is the Act of 1868, consisting of two hundred and nineteen sections. This Act omits some of the sections in the several Articles of the Code referred to, including that incorporated into Article 26 by the Act of 1864. It modifies and amends some, and includes many others which are copied into it word for word, with no change whatever. It also contains many new and important additions, and carefully arranges and systematises the whole subject. An examination of its provisions, without resort to its title for aid in that respect, has satisfied us the Legislature intended this law to be a *substitute* for all existing *general laws* on the same subject. The requirements of the Constitution, the parties by whom, and the manner in which it was adopted, as well as the framework, scope and extent of the Act itself, show this beyond question. Now, what is the rule of construction in such cases settled by numerous decisions of high authority? It is thus stated by the Supreme Court of Massachusetts in *Bartlet vs. King*, 12 *Mass.*, 545: "A subsequent statute revising the whole subject-matter of a former one and evidently intended as a substitute for it, although it contains no express words to that effect, must on principles of law as well as in reason and common sense, operate to repeal the former." In that case, as stated in the subsequent decision in *Nichols vs. Squire*, 5 *Pick.*, 169, "an exceedingly useful statute passed in 1754, concerning donations and bequests to pious and charitable uses, was held not to be in force, the Legislature having in 1785 legislated upon the same subject and omitted to re-enact the provisions of that statute." In *Ellis vs. Paige*, 1 *Pick.*, 45, the same Court declares in very emphatic terms: "It is a well settled rule that when any statute is revised, or one Act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered

as annulled. To hold otherwise would be to impute to the Legislature gross carelessness or ignorance; which is altogether inadmissible.'' The same doctrine is announced by the Supreme Court of Maine in *Pingree vs. Snell*, 42 *Maine*, 55, and by the Supreme Court of Vermont in *Farr vs. Brackett*, 30 *Verm.*, 346, and *Giddings vs. Cox*, 31 *Verm.*, 609. There is also a very well considered case by the Supreme Court of California, (*State vs. Conkling*, 19 *Cal.*, 512,) where it is said: ''We do not consider that the rule applicable here is, that this is a repeal by implication as that rule is usually applied; but the principle is, that when the Legislature makes a revision of particular statutes, and frames a general statute upon the subject-matter, and from the frame-work of the Act it is apparent that the Legislature designed a complete scheme for this matter, this is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is ignored. This doctrine of construction not only commends itself by its plain sense and justice, but is sanctioned by numerous authorities.'' Reference may also be made upon the same subject, and as decisions to the same effect, to *Gorham vs. Luckett*, 6 *B. Monroe*, 154; *Governor vs. Stout*, 22 *Wisconsin*, 236; *Pulaski County vs. Downer*, 5 *English*, 590, and *Rogers vs. Watrous*, 8 *Texas*, 65.

We have no hesitation in adopting the rule thus sustained by authority. It challenges approval upon every consideration, and in our judgment, is justly made an exception to the general doctrine so frequently and emphatically announced by this Court, that repeals by implication, are things disfavored by law. After these Commissioners had thus industriously compiled and framed, and the Legislature adopted, a long revisory and amendatory Act proceeding to the most minute details, in reference to the formation, powers, duties and obligations of, and suits, process, and proceedings against corpora-

Montel & Co. *vs.* Consolidation Coal Co.

tions, forming a comprehensive and elaborately arranged system of legislation on these subjects, it would not only be strange, but productive of the greatest doubt and uncertainty, and of innumerable controversies, if every omitted provision of existing laws on these same subjects, were held to be still in force and the Courts required to determine whether every section of such laws, whether omitted or amended, might or might not stand in connection with the new legislation. So to hold would render the work of revision a work of confusion and make it almost worse than useless. In such case it is far better and safer for the Courts to determine the new law to be a substitute for every thing contained in the old.

It may also be noticed that there are new provisions introduced into the Act of 1868, (in its several sections from 176 to 183 inclusive,) which authorize proceedings against any corporation to ascertain whether it has been guilty of such misuse, abuse or non-user of its corporate powers and franchises as would warrant a forfeiture of its charter, and giving the Courts discretionary power in such cases before passing a final decree of forfeiture, to pass orders requiring the corporation within a limited time to remedy the grievance complained of, and suspend passage of such final decree until the time so limited, and then if the grievance shall have been remedied to refuse to pass such decree. The grievance complained of by the appellants in this case, is undoubtedly one, which, if valid at all, would authorize proceedings under these sections against the appellee for forfeiture of its charter. In fact it is difficult to conceive of any grievance warranting a proceeding under the Act of 1864, which would not equally warrant one under the Act of 1868. The only material differences are that in the one case the aggrieved party may proceed on his own motion, while in the other the Governor must authorize the institution of the proceeding, and in one it may be more summary and expe-

ditious than in the other.  But the Courts cannot assume the Governor will not discharge his duty in this respect and if the Legislature have by the Act of 1868, committed the institution of such proceedings to him, instead of leaving it as does the Act of 1864, to the voluntary action of the party who may consider himself aggrieved, and both laws provide remedies differing only in form, for the same substantial grievances, then is it not clear the Legislature intended by the latter Act to prescribe the only rules which should govern in such cases?  In that event there is also high authority for the position that even though two statutes relating to the same subject be not in terms repugnant or inconsistent, yet if the later statute was clearly intended to prescribe the only rule which should govern in the case provided for, it will be construed as repealing the original Act.  *Daviess vs. Fairbairn*, 3 *How.*, 636; *Plank Road Co. vs. Allen*, 16 *Barb.*, 18.

But without placing special reliance on this point, we rest our decision upon the position first stated, of the omission of this section of the old law from the new and revised statute of 1868.  Of course we are not to be understood as holding that the Act of 1868 has repealed the provisions of the charters of any corporations previously created and existing by virtue of special Acts of Assembly. Our views as to the effect of this Act in such cases have been expressed in the case of *Webb, et al. vs. Ridgely, et al.*, 38 *Md.*, 364.

Being clearly of opinion the law under which this proceeding was taken, was not in force at the time of its institution, we shall affirm the order dismissing the petition, without expressing any opinion upon the questions which would have arisen if that law were still operative.

*Order affirmed.*

(Decided 7th January, 1874.)