DENNIS CLAUDE *vs.* JOHN H. WAYSON ET ALS.
FRANK A. WALFRAM *vs.* SAME.
JAMES D. FELDMEYER *vs.* SAME.

*Justices of the peace*: term of office; two years from first
Monday in May; do not hold over except
as de facto officers.

The words extending the term of office of justices of the peace,
"until the appointment and qualification of their successors,"
found in the Constitution of 1851, were omitted from the
Constitutions of 1864 and 1867, and it is to be assumed that
the words were omitted intentionally.               p. 487

The declaration in *Taylor* v. *Hebden,* 24 Md. 202, that the
term of office of justices of the peace was regulated by sec. 6
of Art. 12 and sec. 47 of Art. 4 of the Constitution of 1864,
is not to be followed; under the facts in that case it was not
necessary for the Court to decide the question, the extent of
the term of office of justice of the peace under the Constitu-
tion of 1864 not having been there presented.          p. 488

Under Art. 2, sec. 13, of the Constitution of 1867, the term
of the offices therein mentioned, as far as applicable, com-
mence at the time there stated and continues for two years
(unless removed), and "until their successors are appointed
and qualified," *except in cases otherwise provided for in the
Constitution;* such continuation of the term does not apply
to the term of office of justices of the peace, since by sec. 42
of Art. 4 of the Constitution, it is expressly provided that
justices of the peace shall hold their office for two years.
p. 488

The duration of the term of office of justices of the peace
depends solely upon sec. 42 of Art. 4 of the Constitution,
but although their office expires within two years from the
date of their appointment they may continue in office there-
after, to perform their duties as *de facto officers,* until the
appointment and qualification of their successors.     p. 490

If a Constitution or statute, without expressly fixing the term of office, merely provides that there shall be an election or appointment annually, or at stated periods, one so elected holds over until his successor qualifies. p. 488

J. B. W. and J. N. D. had been duly appointed justices of the peace for an election district of Anne Arundel county, their term of office being for two years from the first Monday in May, 1910; in February, 1912, the Governor appointed to the Senate as justices of the peace for the same election district D. C. and J. D. F., to succeed said J. B. W. and J. N. D.; after the final adjournment of the Senate without taking action on such nominations, the Governor appointed and commissioned the said D. C. and J. B. F. as justices of the peace for their election districts "for the term of two years after the first Monday of May, 1912, or until duly discharged therefrom." D. C. and J. D. F. applied to the County Commissioners of the County for an approval of their bonds that they might qualify; the County Commissioners refused, not for the insufficiency of their bonds, but solely on the ground that J. B. W. and J. N. D. held over in their office, and that there was no vacancy, and the Governor had no right so to appoint successors to their office; D. C. and J. D. N. applied for a writ of mandamus to compel the County Commissioners to approve their bonds and to compel the clerk of the Court to administer to them the oath of office; the application was refused and on appeal *it was held* that such refusal was erroneous and that the writ should have issued as prayed. p. 490

Under sec. 42 of Art. 4 of the Constitution, the Governor has authority to appoint justices of the peace when a vacancy occurs in the office, *"for the residue of the term,"* and it is imperative that the time for which such appointees is to hold office is to be certain and definite. p. 490

*Decided July 10th, 1912.*

Appeal from the Circuit Court for Anne Arundel County.

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Pearce, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

*Edgar H. Gans,* for the appellants.

*Ridgely P. Melvin* and *Isaac Lobe Straus,* for the appellees.

Pattison, J., delivered the opinion of the Court.

This case is before us on appeal from the order and judgment of the Circuit Court for Anne Arundel County refusing to grant the writ of mandamus asked for by the appellant, in his petition, against the appellees, the County Commissioners for Anne Arundel County, commanding them to approve the bond of the appellant, and also against George Wells, clerk of the said Court, commanding him to administer to the appellant the oath of office of justice of the peace for the sixth election district of said county; and dismissing the said petition of the appellant, with costs to the defendants. The facts are not disputed.

The Governor of Maryland in the year 1910, by and with the advice and consent of the Senate and pursuant to Chapter 334 of the Acts of 1892, appointed John B. Wells and John N. Davis to be justices of the peace for said election district of said county, both of whom were commissioned on April 20th, 1910, and each of them thereafter qualified by having his bond approved by the County Commissioners for Anne Arundel County, and by taking the oath of office before the clerk of the Circuit Court for said county; the former on the 2nd day of May, 1910, and the latter on the 26th day of April, 1910.

Dennis Claude, the appellant, and one James D. Feldmeyer were, by the Governor, on February 14th, 1912, nominated to the Senate for justices of the peace for the said sixth election district of Anne Arundel County as successors to the said Wells and Davis, but the Senate finally adjourned without taking any action on said nominations. After the

final adjournment of the Senate, on April 22nd, 1912, the said Claude and Feldmeyer were by the Governor appointed and commissioned justices of the peace for the said sixth election district of said county "for the term of two years from the first Monday in May, 1912, or until duly discharged therefrom." The appellant on the 7th day of May, 1912, attempted to qualify by submitting a bond, as required by the Acts of 1892, Chapter 334, to the County Commissioners for Anne Arundel County, but as alleged in said petition, said commissioners refused to approve his bond "not because it was not sufficient or in conformity with the laws of the State providing therefor, but solely upon the ground that under the Constitution of the State the aforesaid John B. Wells and John N. Davis held over in their aforesaid office of justice of the peace, that there was no vacancy in said offices, and that the Governor of Maryland had no right to make the appointment of the said Dennis Claude aforesaid; and that they had accordingly already, to wit, on the 23rd day of April, 1912, approved the bonds of John B. Wells and John N. Davis submitted to them for approval." And on the said 7th day of May, 1912, he further attempted to qualify by offering to take the oath of office prescribed by the Constitution and laws of this State before George Wells, clerk of the Circuit Court for Anne Arundel County, one of the defendants, but he refused to administer the oath thus tendered because of the acts of the County Commissioners in refusing to approve the bond and for the reasons assigned by the said commissioners.

The question here presented is the validity of the appointment of the appellant by the Governor. The power of the Governor to make this appointment is said by the appellant to be found in sections 42 and 43 of Article 4 of the present Constitution, which are practically the same as sections 47 and 48 of the Constitution of 1864. These sections, so far as they are pertinent to the question presented, are as follows:

"Section 42. The Governor, by and with the advice and consent of the Senate, shall appoint such number of justices of the peace, and the County Commissioners of the several counties, and the Mayor and City Council of Baltimore, respectively, shall appoint such number of constables, for the several election districts of the counties, and wards of the City of Baltimore, as are now, or may hereafter be prescribed by law. * * * The justices of the peace and constables, so appointed, and commissioned, shall be conservators of the peace, shall hold their office for two years, and shall have such jurisdiction, duties and compensation, subject to such right of appeal, in all cases, from the judgment of justices of the peace, as hath been heretofore exercised, or shall be hereafter prescribed by law."

"Section 43. In the event of a vacancy in the office of a justice of the peace, the Governor shall appoint a person to serve, as justice of the peace, for the residue of the term, and in case of a vacancy in the office of constable, the County Commissioners of the county in which the vacancy occurs, or the Mayor and City Council of Baltimore, as the case may be, shall appoint a person to serve as constable for the residue of the term."

By section 19 of Article 4 of the Constitution of 1851, justices of the peace and constables were elected by the legal and qualified voters of the election districts and wards of the city respectively, and held their office for two years from the time of their election and until their successors in office were elected and qualified. It will be observed that this extension of the term of office "until their successors in office are elected and qualified," is not found in section 42 of Article 4 of the present Constitution. And it is because of this omission that the appellant contends that the term for which the said Wells and Davis were appointed justices of the peace expired at the end of two years from the first Monday in May, 1910, and that inasmuch as no action was taken by the Senate upon the nomination made to it by the Governor, as above stated, no appointment of their successors in

office was made by the Governor by and with the advice and consent of the Senate, and thus after the expiration of said term of two years from the said first Monday in May, 1910, as contended by the appellant, the office became vacant and the Governor was empowered to fill such vacancy.

It is on the other hand contended by the appellees that we must not look alone to section 42 of Article 4 of the Constitution to ascertain the full term of office for which Wells and Davis were appointed, but that in connection with section 42 we are to consider section 13 of Article 2 of the Constitution, which provides that "all civil officers appointed by the Governor and Senate shall be nominated to the Senate within fifty days from the commencement of each regular session of the Legislature; and their term of office, except in cases otherwise provided for in this Constitution, shall commence on the first Monday in May next ensuing their appointment and continue for two years (unless removed from office) *and until their successors, respectively, qualify according to law;* but the term of office of the Inspectors of Tobacco shall commence on the first Monday in March next ensuing their appointment."

If section 13 of Article 2 of the Constitution is to be read into section 42 of Article 4, and the provisions thereof in respect to the term of office—"until their successors respectively qualify according to law"—be made to apply to the office of justice of the peace, then we would have no difficulty in reaching the conclusion contended for by the appellees, that the term of office of Wells and Davis continued until the qualification of their successors, appointed by the concurrent action of the Governor and the Senate, and as there has been no such appointment, no vacancy could be said to exist to be filled by the Governor.

It thus becomes necessary for us in the determination of the question presented by this appeal to determine whether or not section 13 of Article 2 of the Constitution should be read into section 42 of Article 4 of the Constitution and made to apply to the term of office of justices of the peace.

Our predecessors in discussing the case of *Taylor* v. *Hebden,* 24 Md. 202, relied upon by the appellee, said: "Whilst (the appellee was) thus in office, the People of the State in convention assembled, framed and adopted a new Constitution, which went into effect on the first day of November, 1864. By it the tenure of office of justices of the peace was changed from election by the people, to appointment by the Governor, by and with the advice and consent of the Senate, the term of office to be two years. Art. (4), Part 6, sec. 47. And by Article 2, section 16 (Constitution of 1864), it is provided that 'all civil officers appointed by the Governor and Senate, shall be nominated to the Senate within fifty days from the commencement of each regular session of the Legislature; and their term of office, except in cases otherwise provided for in this Constitution, shall commence on the first Monday in May next ensuing their appointment, and continue for two years (unless sooner removed from office) and until their successors, respectively, qualify according to law.' " (It will be observed that this section is practically the same as section 13 of Article 2 of the present Constitution.)

"These provisions regulate the original appointments of justices of the peace (as distinguished from filling of vacancies), and fix the time for the commencement and *termination of their office.* The regular sessions of the General Assembly are biennial; the appointments of justices of the peace are to be made at each regular session; and their term of office shall commence on the first Monday in May next ensuing their appointment. No other time is fixed for this purpose in the Constitution. This mode allows a full session for the appointments to be made, and reasonable time for issuing their commissions and for their qualification for office. By it order and regularity are observed, and after the first appointments under the Constitution shall have been made, the machinery of government in this branch of the public service will move on without interruption.

Such is the obvious design of the Constitution in this respect."

In the case from which we have just quoted, the appellant was, in December, 1865, nominated to and confirmed by the Senate at an extra session of the General Assembly, for justice of the peace. Sec. 16 of Art. 2 of the Constitution of 1864, then in force, provided that all civil officers appointed by the Governor and Senate should be nominated to the Senate within fifty days from the beginning of each *regular* session of the General Assembly. It was because of the fact that the nomination was so made to the Senate at an *extra* session, and not at a *regular* session of the General Assembly, that the validity of the appointment was assailed.

In deciding the question there raised, it was not necessary for the Court to have held, as it did, that the *termination* of the term of office of justices of the peace was *regulated and fixed* by Sec. 47 of Art. 4, and Sec. 16 of Art. 2 of the Constitution of 1864. Hebden, the appellee in that case, was in November, 1863, elected justice of the peace under the Constitution of 1851, for the term of two years from the time of his election and until his successor in office was elected and qualified, and upon the adoption of the Constitution of 1864, he was protected in his tenure of office by Sec. 6 of Art. 12 thereof, which provided that he should hold and exercise his office according to his present tenure until he should be superseded pursuant to its provisions and until his successor be duly qualified. Such successor was to be nominated by the Governor to the Senate within fifty days from the beginning of a *regular* session of the General Assembly, and upon confirmation by the Senate his term of office was to commerce on the first Monday of May thereafter. To this extent only were the provisions of section 16 of Article 2 (Constitution of 1864), involved in the determination of the question presented in that case. The provision therein contained that those to whom the section was

applicable should continue in office "for two years (unless sooner removed from office), and until their successors, respectively, qualify according to law," was in nowise involved in the determination of the question there presented. And, therefore, as we have said, in deciding the question presented in that case, it was altogether unnecessary for the learned judge who delivered the opinion, to have held, as he did, that this section considered in connection with section 47 of Article 4, regulated and fixed the *termination* of the term of office of justice of the peace. It stated the time when the nomination should be made to the Senate and fixed the commencement of the term, for in these particulars section 47 of Article 4 of the Constitution is silent.

As we have said, the extent of the term of office of justices of the peace, under the Constitution of 1864, was not presented in the case of *Taylor* v. *Hebden,* but in this case it is, and we are now to determine whether or not the extent of such term of office shall depend solely upon section 42 of Article 4 (Constitution of 1867), which provides that they shall hold their office "for two years," or whether we shall read into that section, in extension of that term, the language found in section 13 of Article 2, "and until their successors, respectively, qualify according to law."

As we have said, under section 19 of Article 4 of the Constitution of 1851, justices of the peace and constables were elected by the people. The language of said section as to their tenure of office was, that they "shall hold their office for two years from the time of their election and until their successors in office are elected and qualified." Vacancies in such offices were to be filled until the next general election of said officers; those in the office of justice of the peace, by the Governor, and those in the office of constable, by the County Commissioners of the several counties and the Mayor and City Council of Baltimore, respectively.

Under the Constitution of 1864, justices of the peace and constables were appointed, the former by the Governor, by and with the advice and consent of the Senate, and the latter

by the County Commissioners of the several counties and the Mayor and City Council of Baltimore, respectively. Both the justices of the peace and constables were appointed for "two years," with no additional words, such as are found in the Constitution of 1851, extending their term until the appointment and qualification of their successors. In case of a vacancy in these offices, the same were to be filled for "the residue of the term;" the vacancies in the office of justice of the peace were to be filled by the Governor, and those in the office of constable were to be filled by the County Commissioners of the several counties and the Mayor and City Council of Baltimore, respectively, as in the previous Constitution of 1851.

The provisions of the Constitution of 1864, as to these offices, were practically copied into the Constitution of 1867. In respect to all other appointive offices mentioned in the Constitution of 1867, as we recall, words are found similar to those appearing in section 19 of Article 2 of the Constitution of 1851, extending the term of office "until their successors in office are elected and qualify," and so far as we have discovered, this is also true of the elective offices, except judges of the Orphans' Court, surveyors and wreck master of Worcester County. The absence of such words in respect to these offices, may be explained by the fact that the authorities are almost unanimous in holding that if a Constitution or Statute, without expressly fixing the term of office, merely provides that there shall be an election or appointment annually or at stated periods, the one so elected holds over until his successor qualifies. 23 *Am. & Eng. Encyc. of Law,* 2nd Ed., 418.

As disclosed by the debates of the Convention of 1864, different views were entertained by the different members thereof as to the manner of filling the office of justices of the peace. Some were for the appointment of them by the judges, others favored their appointment by the Governor by and with the advice and consent of the Senate, while some

advocated their election by the people as under the previous Constitution. After much discussion, with the provisions of the Constitution of 1851 constantly before the convention, the section as we now find it in the Constitution of 1864, without any words extending the term of office to the appointment and qualification of their successors, was agreed upon.

With these facts before us, it is unreasonable to assume that words similar to those found in the Constitution of 1851, extending the term of office of justices of the peace to the appointment and qualification of their successors, were unintentionally omitted from the Constitution of 1864, and also from the Constitution of 1867. On the contrary, we are rather forced to the conviction that the convention deliberately and intentionally made the distinction between justices of the peace and constables and other officers provided for in the Constitution.

The provisions of section 16 of Article 2 of the Constitution of 1864 (practically the same as section 13 of Article 2 of the Constitution of 1867) are found in section 14 of Article 2 of the Constitution of 1851. The only difference therein being the insertion in the Constitutions of 1864 and 1867 of the italicised words "except in cases otherwise provided for" which appear in section 16 of Article 2 of the Constitution of 1864 hereinbefore fully set out.

It cannot be said that section 14 of Article 2 of the Constitution of 1851 applied to justices of the peace, for under that Constitution justices of the peace were elected by the people, however much it may be contended that like words "and until their successors, respectively, qualify according to law," found in section 13 of Article 2 of the Constitution of 1867, should be made to apply to justices of the peace in extension of their term of two years, provided for in section 42 of Article 4 of said Constitution.

Section 13 of Article 2 of the present Constitution, under which the question here presented arises, as we have said, provides that the term of the offices therein mentioned, to which the same is applicable, shall commence at the time

therein stated and continue "for two years (unless removed from office), and until their successors, respectively, qualify according to law," *except in cases otherwise provided for in the Constitution.* Therefore to make this section, in respect to the extent of the term of office, applicable to justices of the peace, or in fact to any other office, it must be shown that no provision has been made elsewhere in the Constitution for such term of office. This cannot be said of the term of the office of justice of the peace, when by section 42 of Article 4 it is expressly provided that justices of the peace shall hold their office for *two years.*

The term of office of justice of the peace is for two years, and not two years and until their successors are appointed and qualify, as it would be if the language found in section 13 "until their successors, respectively qualify according to law" were made applicable thereto.

If the term fixed by section 42 of Article 4 had been for four years, for example, instead of two, it could not be pretended that section 13 of Article 2 would apply, as it would have been in direct conflict with section 42 which made special provision for these offices. How then, can it be said that it can change the "two years" to "two years and until their successors qualify," simply because the term named in section 42 happens to be two years? It does not say that all civil officers appointed for two years shall continue for two years and until their successors qualify, as the Constitution nowhere says that all officers appointed or elected for a definite term shall continue until their successors are elected and qualified.

Having reached the conclusion that we have stated, we cannot give our assent to the views expressed by our predecessors in the case of *Taylor* v. *Hebden, supra,* that section 16 of Article 2 of the Constitution of 1864 (section 13 of Article 2 of the present Constitution) considered in connection with section 47 of Article 4 of the Constitution of 1864 (section 42 of Article 4 of the present Constitution) regulated and fixed the *termination* of the term of office of

justice of the peace, which as we have said were unnecessary in the decision of the question there presented.

Taking this view of the case, the extent of the term of office of justice of the peace is dependent solely upon section 42 of Article 4 which fixes the term for *two years*.

It was said by this Court in the case of *Smoot* v. *Somerville,* 59 Md. 88, that "It has been contended that, inasmuch as the term of office of tobacco inspectors commences on the first Monday of March and is to continue two years, a vacancy occurred immediately upon the expiration of the two years; and such would be the case were it not for the further provision of the 13th section, by which all officers are to continue in office until their successors, respectively, qualify according to law."

The Court there was discussing the very section of the Constitution which is involved in this case, and it was because of the extension of the term of two years, resulting from the use of the words "until their successors, respectively, qualify according to law," that the Court in that case held that the position of the appellant was untenable. These words, as we have stated, are not to be added to the term justices of the peace, and as they are not, it is consistent with the expression of the Court in that case to hold, as we do, that vacancies occurred in the offices of justices of the peace in the sixth election district of Anne Arundel County immediately upon the expiration of the term of two years, from the first Monday in May, 1910.

This Court also said in the case of *Lynn* v. *Cumberland,* 77 Md. 455, speaking through JUDGE McSHERRY, "Had the ordinance made no provision for the collector continuing in office after the expiration of the term for which he was elected, a different case might have been presented as to the liability of the surety, but we are not now called upon to decide such a case."

The term of office of Wells and Davis expired two years from the first Monday, in May 1910, but notwithstanding

the vacancy thereafter existing they, as *de facto* officers, continued in the performance of the duties of the office of justices of the peace until their successors should be duly appointed and *qualified.*

Section 42 of Article 4 confers upon the Governor the authority to appoint in cases of vacancies occurring in the office of justices of the peace "for the residue of the term."

It is important that the time, for which the appointee is appointed to hold office, be made certain and definite.

In respect to the office of justice of the peace the appointment is for the "residue of the term." In some of the cases provided for by the Constitution the appointment is made until the end of the next Legislature and in other cases different times are named at which the term of the appointment is to end. So it will be seen that although different times may be, and are selected, in the different cases, for the termination of the term of office for which the appointment is made, yet in all cases the time is fixed and determined, as it should be.

The question is whether there is a vacancy in the term, if there is, the appointment is made to cover such vacancy, of course such term cannot begin before the previous term is ended.

"The residue of the term" was intended to fix the end of the time for which the appointee is to be appointed. What ever may be vacant of the term, whether it be all or only a small part thereof, is to be filled.

From what we have said the Court below erred in refusing the writ of mandamus, and therefore the judgment will be reversed.

> *Judgments reversed in each case, with costs to the appellants.*